# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00328-CV

## In the Matter of I. R. H.

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-20,821, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

After waiving his right to a jury trial, I.R.H. was adjudicated delinquent for criminal mischief in an amount more than $1500 but less than $20,000. *See* Tex. Fam. Code Ann. ' 54.03 (West Supp. 2002); Tex. Pen. Code Ann. '' 28.03 (West Supp. 2002), .06 (West 1996). The juvenile court placed I.R.H. on probation for eighteen months in his parents= custody and ordered him to pay restitution in the amount of $2106. I.R.H. raises five issues on appeal. We conclude that the juvenile court erred in overruling I.R.H.=s objection to the qualifications of an expert witness and that the evidence was legally insufficient to support the judgment; we therefore reverse and render judgment of acquittal.

## BACKGROUND

Michael Stafford, the complaining witness, lived on an eight-acre tract of land. Located on the back of his property were five abandoned vehicles that came with the purchase of the land; Stafford intended to sell the parts of these junk cars. On February 3, 2001, Stafford was changing the tire on a

truck near his home when he heard smashing noises coming from the back of his property. When he went to investigate, he saw I.R.H. and two others smashing the windows of one of the abandoned vehicles with a large steel bar. The three left when they saw Stafford. Later, after assessing the damage to the vehicles, Stafford discovered that several windows and windshields on the vehicles had been smashed, and all had distinct round marks on them. After calling a windshield repair shop, Stafford assessed the cost of replacing the damaged windows and windshields at $2106.

I.R.H. was subsequently charged with criminal mischief in an amount exceeding $1500 but less than $20,000. I.R.H. waived his right to a jury and to a hearing before a juvenile court judge; following a hearing before a juvenile court referee, the court adjudicated I.R.H. delinquent, placed him on probation for eighteen months, and ordered restitution in the amount of $2106, the cost of repairing the vehicles.[1] I.R.H. now appeals.

## DISCUSSION

**Fatal Variance**

By his first two issues, I.R.H. contends that a material variance exists between the allegations in the State=s petition and the proof adduced at trial and, therefore, the evidence is legally and factually insufficient to sustain his adjudication of delinquency.

---

[1] Both the adjudication hearing and the dispositional hearing were held before a juvenile court referee, whose findings and recommendations were adopted by the juvenile court judge. *See* Tex. Fam. Code Ann. ' 54.10(a), (b) (West Supp. 2002).

In criminal cases, a variance between a charging instrument and evidence adduced at trial has been held to constitute a legal sufficiency issue. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). A sufficiency-variance issue arises when the State proves the defendant guilty of a crime, but proves the commission of the crime in a manner that varies from the allegations in the indictment. Such a variance, if material, may render the evidence insufficient to sustain the conviction. *Id.* at 247.

In a juvenile proceeding, because the rules of civil procedure govern, a fatal variance between the pleadings[2] and proof is determined by considering whether the variance is substantial, misleading, and prejudicial. *In re O.C.*, 945 S.W.2d 241, 243 (Tex. App.C San Antonio 1997, no writ) (citing *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 937 (Tex. 1980)); *In re A.B.*, 868 S.W.2d 938, 942 (Tex. App.C Fort Worth 1994, no writ) (citing *Winfield v. Renfro*, 821 S.W.2d 640 (Tex. App.C Houston [1st Dist.] 1991, writ denied)). Criminal mischief is defined by the penal code as follows: AA person commits an offense if, without the effective consent of the owner: (1) he intentionally or knowingly damages or destroys the tangible property of the owner ... .@ Tex. Pen. Code Ann. ' 28.03(a)(1). The State=s petition alleges that I.R.H. Aintentionally and knowingly damage[d] or destroy[ed] tangible property, to wit: five (5) motor vehicles, without the effective consent of Michael Stafford, the owner, and thereby caused pecuniary loss to said owner in the amount of $1,500.00 but less than $20,000.00.@ I.R.H. argues that because the State specified in its petition that I.R.H. damaged or

_____

**2** Section 53.04 of the family code sets forth the requirements for the State=s petition in a juvenile proceeding: AThe petition must state: (1) with reasonable particularity the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts.@ Tex. Fam. Code Ann. ' 53.04(d)(1) (West 1996).

destroyed five Amotor vehicles,@the State was required to offer proof that the tangible property damaged or destroyed were motor vehicles, as opposed to general Avehicles.@ Citing the transportation code, I.R.H. argues that a vehicle must be self-propelled to fall within the definition of a motor vehicle. *See* Tex. Transp. Code Ann. ' 541.201(11) (West Supp. 2002). He claims that because the five vehicles on Stafford=s property were inoperable and were essentially junk cars,[3] the State failed to satisfy its burden, and its failure to present evidence corresponding to the language used in the petition constitutes a fatal variance.

Assuming without deciding that there is a variance between the State=s petition and the evidence adduced at trial, I.R.H. does not describe how this variance is substantial, misleading, and prejudicial. There is no indication in the record that I.R.H. did not know what property he was accused of destroying or damaging, or that he was surprised by the proof at trial. Furthermore, I.R.H. does not allege that he was unable to prepare a defense because of this variance. We thus hold that any variance that may have existed between the State=s petition and the evidence presented was not fatal and overrule I.R.H.=s first two issues.[4]

---

[3] The juvenile court acknowledged that the vehicles were inoperable. Stafford only intended to use the vehicles for parts; he did not hold titles to the vehicles.

[4] We note that the court of criminal appeals has constructed a test for identifying material variances in criminal cases:

> A variance between the wording of an indictment and the evidence presented at trial is fatal only if Ait is material and prejudices [the defendant=s] substantial rights.@ When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.



*Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). Even under the *Gollihar* standard, I.R.H. has not shown the existence of a material variance. There is no evidence that he was unable to prepare an adequate defense at trial or that he would be subject to the risk of being prosecuted later for the same crime. *See Santana v. State*, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001) (if prosecuted again, defendant may avail himself of entire record and not merely charging instrument).

**Expert Witness Qualifications**

By his fifth issue, I.R.H. argues the juvenile court erred in overruling his objection that Stafford was not qualified as an expert to testify regarding the cost of repairing the vehicles.[5] During the State=s direct examination of Stafford, the State asked Stafford if he knew the amount of loss that he suffered as a result of the destruction of his property. I.R.H. objected based on hearsay and speculation; the juvenile court overruled both objections. I.R.H. then requested to take the witness on voir dire, and the juvenile court acquiesced. On voir dire, I.R.H. challenged Stafford=s qualifications to testify regarding the cost of repairs to the vehicles:

Q:  Now, Mr. Stafford, you had to prepare for this trial today, didn=t you?

A:  Yes.

Q:  And as a profession, your profession --

THE COURT:  The voir dire is about the value of the windows.

[DEFENSE COUNSEL]:  Yes, Your Honor.

THE COURT:  So ask him questions about that.

[DEFENSE COUNSEL]:  So you had to find out how much those windows cost?

A:  Yes.

---

[5] I.R.H. also argues that the admission of Stafford=s testimony constituted hearsay and violated his constitutional right to confrontation under both the federal and state constitutions. I.R.H. did not object during the trial based on his constitutional right of confrontation, and has therefore waived any error based on this assertion. *See* Tex. R. App. P. 33.1(a). Because we are reversing based on Stafford=s lack of qualifications to testify as an expert, we need not reach I.R.H.=s hearsay complaint. *See* Tex. R. App. P. 47.1.

Q: And in the process of finding out how much those windows cost, you called a windshield repair place to price those windows?

A: Correct.

Q: And when you went to the windshield repair place -- by profession you install septic tanks -- you did not know what the value of those windows were, did you?

A: I called down to get the prices of them, yes.

Q: And you did not know what the value was?

A: No.

Q: Okay. And they told you the replacement value of those windshields was $2,100?

A: Of all the windows.

Q: And you believe that you=re entitled to that replacement value?

A: Yes.

Based on this exchange, defense counsel lodged a third objection to Stafford=s testimony: AYour Honor, the witness is not qualified as an expert with regard to the windshields and therefore cannot testify as to their value.@ The juvenile court overruled the objection, implying that Stafford was qualified as an expert regarding the value of windshield repair. Stafford subsequently provided the following testimony during direct examination by the State:

Q: So based on the research you=ve done to assess the amount of losses you suffered as a result of this destruction, your damage was $2,106?

A: Yes, I believe -- yes.

Q: And that is the cost of repairing the windshields that were damaged, correct?

**7**

A:    All the windows, yes.

In response to I.R.H.=s issue on appeal, the State urges that I.R.H. has waived his complaint because he initially elicited the complained-of testimony during his voir dire of the witness and therefore cannot object to Stafford=s subsequent testimony during direct examination by the State.  We disagree.

The purpose of voir dire examination is to afford a defendant the opportunity to determine the foundation of an expert=s opinion without fear of eliciting damaging hearsay or other inadmissible evidence in the jury=s presence.  Tex. R. Evid. 705(b); *Alba v. State*, 905 S.W.2d 581, 587-88 (Tex. Crim. App. 1995) (citing *Goss v. State*, 826 S.W.2d 162, 168 (Tex. Crim. App. 1992)).  A Rule 705(b) hearing may also supply defense counsel with sufficient ammunition to make a timely objection to the expert=s testimony on the ground that it lacks a sufficient basis for admissibility.  *Alba*, 905 S.W.2d at 588. The rule does not limit the use of this procedural device to jury trials, and we have found no authority suggesting that voir dire during a trial to the court should be treated differently.  Accordingly, we hold that I.R.H. did not waive error by eliciting testimony from Stafford during the voir dire examination.

The significance of Stafford=s testimony is apparent when considered in the context of the offense charged.  The offense of criminal mischief includes the element of the value of the injury inflicted.**[6]** *Gallardo v. State*, 321 S.W.2d 581, 582 (Tex. Crim. App. 1959).  Generally, the extent or amount of injury is the difference in the market value of the property before and after its injuryCthe diminution in value

---

**[6]** The amount of pecuniary loss determines the punishment range for the offense.  *See* Tex. Pen. Code Ann. ' 28.03 (West Supp. 2002).

**8**

of the property. *See Wise v. State*, 494 S.W.2d 921, 924 (Tex. Civ. App.CFort Worth 1973, no pet.) (quoting *Milby Auto Co. v. Kendrick*, 8 S.W.2d 743, 744 (Tex. Civ. App.CGalveston 1928, writ dism=d w.o.j.)).  Section 28.06 of the penal code provides two methods for determining the diminution in property value caused by the criminal mischief; the method used depends on whether the property was damaged or destroyed.  Tex. Pen. Code Ann. ' 28.06.  If the property was damaged, the method of determining the pecuniary loss is to establish the cost of repairing the property to restore it to the condition that it was in immediately before the damage occurred.  *Wise*, 494 S.W.2d at 924; Tex. Pen. Code Ann. ' 28.06(b).[7]  AIf the injured property is restored to its condition prior to its injury, its market value would ordinarily be restored, and the cost of such restoration would be identical with the difference between its market value before and after its injury.@ *Wise*, 494 S.W.2d at 924 (quoting *Milby Auto Co.*, 8 S.W.2d at 744).

---

[7]  The statute provides:  AThe amount of pecuniary loss under this chapter, if the property is damaged, is the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred.@ Tex. Pen. Code Ann. ' 28.06(b).

In this case, although the State=s petition alleged that I.R.H. damaged *or* destroyed the property, the State only produced evidence of the cost of repairing the vehicles;[8] thus, the State proceeded under section 28.06(b), which addresses repair of *damaged* property. In order to determine the cost of repairing damaged property, the property need not actually be repaired, *see Elomary*, 796 S.W.2d at 193, but if it is not, expert testimony is required to establish the cost of repair. *Id.*, (lay opinion of amount of damage, without further evidence, is insufficient to satisfy section 28.06(b)); *Nixon v. State*, 937 S.W.2d 610, 613 (Tex. App.CHouston [1st Dist.] 1996, no pet.) (same); *Sebree v. State*, 695 S.W.2d 303, 305 (Tex. App.CHouston [1st Dist.] 1985, no pet.) (same).

With these principles in mind, we now turn to the juvenile court=s overruling of I.R.H.=s objection to Stafford=s qualifications as an expert and the admission of his testimony regarding the cost of repairing the vehicles. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in that regard in the form of an opinion or otherwise. Tex. R. Evid. 702. The person proffering the purported expert=s testimony must demonstrate that the witness possesses the requisite qualifications of an expert. *See Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995); *Holloway v. State*, 613 S.W.2d 497, 501 (Tex. Crim. App. 1981). The special knowledge that may qualify a witness as an expert may be derived from a study of technical works, specialized

---

[8] We note that Stafford testified that the windows and windshields on the vehicles were Adestroyed@ and testified as to the cost of replacing the windows and windshields; however, the State=s petition alleges that the *vehicles* were damaged or destroyed. The State did not attempt to prove that the vehicles were destroyed, only damaged.

education, practical experience, or varying combinations of these things. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Holloway*, 613 S.W.2d at 501. The trial court exercises considerable discretion in determining whether to admit expert testimony on the bases provided in the rule, and that decision will not be disturbed absent a showing of an abuse of that discretion. *Alvarado v. State*, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995); *Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.CFort Worth 1996, no pet.).

The State did not attempt to produce any evidence to qualify Stafford as an expert. There is no evidence that Stafford had any experience in windshield repair, and there is no evidence that he acquired specialized knowledge of the cost of windshield repair. Indeed, though the State asked Stafford if he reached the $2106 figure based on his Aresearch,@ it is apparent that this figure was based on a single estimate provided by a third party. During cross-examination, Stafford admitted that he had called two windshield repair shops to obtain estimates for the repair of the windows on the vehicles. One of those shops provided an undisclosed estimate that did not include installation of the windows. The second repair shop provided the $2106 figure. Stafford did not provide a name of the person to whom he spoke or of the shop he called. He did not provide a written statement from the shop. He did not provide the location of the shop. And there is no indication that the shop even observed the state of the junk vehicles before providing an estimate; the estimate was provided over the phone, according to Stafford. We conclude that Stafford did not possess the requisite special knowledge to testify as an expert and the juvenile court erred in allowing Stafford to provide expert testimony regarding the cost of repairing the vehicles.

Because the error is not constitutional, we will only reverse if it affected I.R.H.=s substantial rights; otherwise, the error must be disregarded. *See* Tex. R. App. P. 44.2(b); *see also In re C.R.*, 995 S.W.2d 778, 785 (Tex. App.CAustin 1999, pet. denied). To make this determination, we must decide whether the error had a substantial or injurious effect on the juvenile court=s finding. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We must consider the entire record, including any testimony or physical evidence admitted for the fact finder=s consideration, the nature of the evidence supporting the finding, the character of the alleged error, and how the alleged error might be considered in connection with other evidence in the case. *Id.*

Stafford=s testimony was the only evidence presented by the State regarding the cost of repairing the damaged vehicles. Even apart from Stafford=s lack of standing as an expert, the cost of repairing broken windows on junk vehicles that Stafford intended to sell for used parts is not an accurate measure of the diminution in the cars= value. When asked if the parts on the vehicles were worth more than the vehicles as a whole, Stafford explained, AIf you would sell them as a whole, you=d probably get junk. In other words, you=d take them and you would get a scrap price for them.@ He agreed that Ascrap price is basically the metal value.@ Stafford also agreed that the windows and windshields could not be fixed. Moreover, Stafford did not have titles to the vehicles and did not intend to operate the vehicles or sell them as operating vehicles. He had Ano idea whether or not [the vehicles] were running. In other words, there=s motors in a few of them, yes, but I did not personally use them, no.@ Officer Sean Freddie of the Travis County Sheriff=s Office also testified that he did not believe any of the vehicles were operable and that a few of the cars had missing doors.

12

Although the statute does not require that the damaged property actually be repaired, *see Elomary*, 796 S.W.2d at 193, the statute presumes that the property is capable of being repaired and that the value of the property can thereby be restored; the cost of the repair should indicate the difference between the market value of the property before and after the damage, or the diminution in value. Before the junk vehicles in this case were damaged, according to Stafford their only value was as scrap metal unless he sold them for their parts. If the value of the junk vehicles before the damage was for parts or scrap metal, the cost of new windows and windshields does not represent the diminution in value of the junk vehicles caused by the damage; it is not indicative of the difference in market value of the junk vehicles before and after the vandalism.

Furthermore, no reasonable person would attempt to restore these vehicles by replacing the windows and windshields with brand new ones. Stafford testified that the windows and windshields could not be repaired and the vehicles were not operable. While operable vehicles may require replacement of smashed windows, the cost of replacing the windows on these junk vehicles does not accurately measure the diminution in value of the vehicles. There is no evidence that the damage to the windows and windshields of these junk vehicles diminished the scrap metal value of the vehicles or their parts; replacing the windows and windshields would not restore the scrap metal value or the value of the used parts. The juvenile court relied on Stafford=s testimony by ordering restitution in the amount of $2106, the cost of repair according to Stafford. We cannot say that the juvenile court=s overruling of I.R.H.=s objection to Stafford=s qualifications as an expert did not have a substantial or injurious effect on the juvenile court=s judgment. We therefore sustain I.R.H.=s fifth issue.

**13**

**Legal Sufficiency of Evidence**

By his third issue, I.R.H. claims the evidence is legally insufficient to show that the amount of pecuniary loss attributable to his actions was more than $1500 but less than $20,000. Adjudications of delinquency in juvenile cases are based on the criminal standard of proof. *See* Tex. Fam. Code Ann. ' 54.03(f). Therefore, we review adjudications of delinquency in juvenile cases by applying the standards applicable to challenges to the sufficiency of the evidence in criminal cases. *See In re E.P.*, 963 S.W.2d 191, 193 (Tex. App.CAustin 1998, no pet.).

In reviewing a legal sufficiency challenge, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See id.* (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Our review includes consideration of all evidence, both admissible and inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 753 (Tex. Crim. App. 1999). We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Gollihar,* 46 S.W.3d at 253; *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). If our review of the record indicates that the evidence is legally insufficient to support the juvenile court=s judgment, we must reverse and render a judgment of acquittal.

Although we have concluded that Stafford was not qualified to testify as an expert regarding the cost of repairing the junk vehicles and that the testimony should have been excluded, we must include inadmissible testimony in our legal sufficiency review of the evidence. Stafford=s testimony was the only evidence presented of the amount of pecuniary loss caused by the damage to the junk vehicles. The court

of criminal appeals has held that an opinion or estimate of damage by an individual who is not competent to give an expert opinion as to repair costs, such as Stafford, without further evidence is insufficient to prove the cost of repairs as required by section 28.06(b) of the penal code. *Elomary*, 796 S.W.2d at 193 (agreeing with appellate court=s holding in *Sebree*). The court distinguished between an individual merely Astating from hearsay what someone else said what the damages might be, from an individual who is shown to be qualified to give his or her expert opinion of what the fair market value of the cost of repairs to the damaged property might be.@ *Id.* at 194. In this case, Stafford=s testimony is equivalent to an individual merely stating from hearsay what someone else said the damages might be, and without further evidence his lay testimony is legally insufficient to prove the cost of repairs.

Although no other evidence was presented as to the cost of repair, the State presented some evidence that the vehicles were damaged. Stafford testified that a Buick Regal Limited had a smashed front windshield. Two rear windows and a passenger window were smashed on a Ford Bronco. A Mercury Marquis had a damaged windshield, two smashed door windows, and a shattered rear glass. The windshield, driver=s door window, and rear sliding glass window had been damaged on a Ford pickup. And finally, an Oldsmobile Delta 88 sustained damage to its windshield and a vent window. Stafford further testified that although the vehicles were not new and had been sitting on his property to be sold for parts, all the windows had been intact before I.R.H. and his companions smashed them. Officer Freddie testified that he observed the broken windows and dents in the vehicles, but he did not attempt to estimate the cost of repairing the damage. In addition, the State presented photos of the vehicles; at the time the photos were

taken, however, further damage had been done to the vehicles, and one of the photos depicted the additional damage.

This evidence is no evidence of the cost of repairing or restoring the value of the parts or the scrap metal value of the junk vehicles; it does not reflect the difference in the market value of the junk vehicles before and after the damage. Furthermore, the evidence does not support Stafford=s testimony that the diminution in value to these junk vehicles is equivalent to the cost of replacing the windows and windshields, or $2106. *See Sebree*, 695 S.W.2d at 305 (lay witness=s description of damage to her vehicle and estimate of cost of repair held legally insufficient). *But see Nixon*, 937 S.W.2d at 613 (holding that after reviewing all evidence, including photos of Aappellant=s truck totally crashed through the rear of the brick home@ and of furniture and other items destroyed, any rational trier of fact would be convinced that such extensive damage would cost in excess of $750 to repair). Viewing the evidence in the light most favorable to the verdict, we conclude that no rational trier of fact could have found beyond a reasonable doubt that the amount of pecuniary loss to the damaged vehicles exceeded $1500. We sustain I.R.H.=s third issue.[9]

---

[9] There is no evidence that the cost of repair is not ascertainable, so section 28.06(d) does not apply. *See* Tex. Pen. Code Ann. ' 28.06(d) (if amount of loss cannot be ascertained, amount is deemed to be greater than $500 but less than $1500); *see also Phillips v. State*, 672 S.W.2d 885, 887 (Tex. App.CDallas 1984, no pet.) (requiring evidence that amount of loss cannot be ascertained); *In re M.T.B.*, 567 S.W.2d 46, 47 (Tex. Civ. App.CEl Paso 1978, no writ) (same).

## CONCLUSION

We overrule I.R.H.=s first and second issues.  Because we conclude that the juvenile court erred in overruling I.R.H.=s objection to Stafford=s qualifications to testify as an expert, we sustain I.R.H.=s fifth issue.  We further hold that Stafford=s lay-witness testimony, without further evidence of cost of repair, is legally insufficient to support the juvenile court=s finding of a pecuniary loss in an amount greater than $1500 but less than $20,000.  We therefore reverse the juvenile court=s judgment and render a judgment of acquittal.[10]


Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Reversed and Rendered

Filed:   August 8, 2002

Do Not Publish

---

[10] Because we are reversing and rendering judgment, we need not reach I.R.H.=s remaining issue. *See* Tex. R. App. P. 47.1.

17